IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| JULIE NOBLE,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | No. C14-1010<br><br>RULING ON JUDICIAL REVIEW |

TABLE OF CONTENTS

I.   INTRODUCTION ............................................. 2

II.  PRINCIPLES OF REVIEW ..................................... 2

III. FACTS ..................................................... 4
    A.  Noble's Education and Employment Background ............... 4
    B.  Administrative Hearing Testimony .......................... 4
        1.   Noble's Testimony .................................. 4
        2.   Vocational Expert's Testimony ...................... 5
    C.  Noble's Medical History ................................... 5

IV. CONCLUSIONS OF LAW ........................................ 9
    A.  ALJ's Disability Determination ............................ 9
    B.  Objections Raised By Claimant ............................ 10
        1.   Burns' Opinions ................................... 11
        2.   Credibility Determination ......................... 13
        3.   RFC Assessment .................................... 17

V.   CONCLUSION ............................................... 19

VI. ORDER .................................................... 19

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Julie Noble on April 9, 2014, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Noble asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Noble requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*,

---

[1] On May 20, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the decision of the Administrative Law Judge ("ALJ") meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d

1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

### III. FACTS

#### A. Noble's Education and Employment Background

Noble was born in 1963. She is a high school graduate. She has no education beyond high school. In the past, she worked in production assembly. More recently, she has worked part-time tending goats.

#### B. Administrative Hearing Testimony

##### 1. Noble's Testimony

At the administrative hearing, Noble testified that she had no problems with standing, lifting, walking, bending, or using her arms. However, Noble stated that she has several mental health concerns, including visual and auditory hallucinations, not wanting to leave her house, and a desire to avoid people. Specifically, she stated that in the past, she had full-day hallucinations about every three days, requiring her to stay in the house. However, she testified that more recently, her hallucinations had improved with medication. With regard to avoiding people, Noble testified that "I prefer to be by myself than around people. Even my family, I, I stay away from. I am getting better at, at associating with people. It's taking a long time."[2] Noble also acknowledged irritability and sometimes fighting with people. Lastly, Noble reported that she suffers from dyslexia, and has difficulty reading.

---

[2] Administrative Record at 41.

4

Additionally, Noble's attorney asked Noble about her ability to perform full-time work:

> Q: The Judge asked you if you had a job where you were milking goats full time if you could do it and you said that you thought you could. Do you think you'd be able to attend eight hours a day, five days a week?
> A: No.
> Q: Why not?
> A: Maybe just the -- if it was more like four or five hours a day, not eight hours.
> Q: Does your anxiety increase the longer you're away from your house?
> A: Yes. It does.

(Administrative Record at 48-49.)

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Roger Marquardt with a hypothetical for an individual who:

> has no exertional limitations. Actually, the only restrictions are brief and superficial interaction with the public and coworkers and occasional interaction with supervisors.

(Administrative Record at 53.) The vocational expert testified that under such limitations, Noble could not perform her past relevant work. The vocational expert testified, however, that Noble could perform the following jobs: (1) caretaker, (2) landscape laborer, and (3) housekeeping cleaner. The ALJ provided the vocational expert with an additional hypothetical that was identical to the first hypothetical, except that the individual would be absent from work 2 or 3 days per week. The vocational expert replied that such a limitation would preclude competitive employment.

### C. *Noble's Medical History*

On June 14, 2010, Noble met with Randi Burns, LMHC, and Angela Wicks, LMHC, both mental health counselors at the Abbe Center for Community Mental Health

in Cedar Rapids, Iowa. In describing Noble's "History of Present Complaint," Burns and Wicks noted that:

> [Noble] struggles with alcohol dependence and relapsed about one month ago after eight months of sobriety. One week ago, [Noble] was involuntarily committed to Covenant Medical Center in Waterloo after she made a comment about ending her life to her sister and her nephew. [Noble] has been court ordered to attend counseling here at Abbe Center and it was recommended that she attend SASC (substance abuse services center) related to her dependency. [Noble] shared several symptoms of anxiety and depression and expressed concern about other physical and psychological concerns. [Noble] expressed an intense fear that she will be committed again as this was a very traumatic experience for her.

(Administrative Record at 374.) Noble reported the following symptoms: feeling sad, feeling discouraged, having a decreased appetite, loss of energy, feeling agitated, difficulty concentrating, motivation problems, feelings of hopelessness, helplessness, and worthlessness, and crying spells. Noble also described having racing thoughts and the inability to multi-task. Upon examination, Burns and Wicks diagnosed Noble with bipolar disorder, depressed type, by history, and alcohol dependence. Burns and Wicks assessed a GAF score of 55 for Noble. Burns and Wicks recommended weekly therapy sessions for treatment.

On June 18, 2010, Noble met with Dr. Douglas H. Jones, M.D., also of the Abbe Center, for medication management. Dr. Jones reviewed Noble's medical history:

> [Noble] has had major depressive episodes as well as manic episodes where she would have a lot of energy, racing thoughts, decreased sleep and she felt too good. She has gotten into fights when she was manic. She also has a history of alcohol dependence when she was a heavy daily drink[er]. She was admitted to Covenant Hospital from June 7, 2010 to June 10, 2010 after having started to drink again. She made some homicidal threats and has some suicidal thoughts. She had been on Lithium since September of 2009 and says that

6

> has helped. . . . Since [she] was discharged from the hospital, she still had symptoms of depression in that her mood is on the low side and she has some crying spells. She says she has been having crying spells for about three years. The Trazodone helps with sleep. Energy varies. Concentration is low. . . . She does relate that at times she will think that there is someone present in the corner of her vision and she will talk to that person, but that person does not talk back.

(Administrative Record at 370.) Upon examination, Dr. Jones diagnosed Noble with bipolar disorder, alcohol dependence, and anxiety disorder. Dr. Jones assessed Noble with a GAF score of 50. Dr. Jones recommended medication as treatment.

Noble continued to meet with Burns, Wicks, and Dr. Jones on a regular basis. Specifically, from June 21, 2010 through November 20, 2012, Noble met with Burns, Wicks, or Dr. Jones approximately 85 times. Noble's assessed GAF scores ranged from 50 to 65 during that time period.

On November 30, 2012, at the request of Noble's attorney, Burns filled out a "Mental Residual Functional Capacity Questionnaire" for Noble. Burns diagnosed Noble with bipolar disorder, and assessed a GAF score of 60. In addition to bi-weekly psychotherapy sessions, Burns noted that Noble was prescribed the following medications: Abilify, Seroquil, Trazodone, and Lamictal. Burns indicated that side effects of the medication included: fatigue, drowsiness, and difficulty concentrating. Burns identified the following symptoms for Noble: anhedonia, decreased energy, feelings of guilt or worthlessness, generalized persistent anxiety, mood disturbances, difficulty thinking or concentrating, persistent disturbance of mood or affect, paranoid thinking, emotional withdrawal and isolation, flight of ideas, manic syndrome, easy distractibility, and sleep disturbance. Burns determined that Noble's prognosis was "guarded." Burns opined that Noble was unable to meet competitive standards in the ability to: understand and remember very short and simple instructions, carry out very short and simple instructions, work in coordination with or proximity to others without being unduly distracted, perform

7

at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in a work setting, understand and remember detailed instructions, carry out detailed instructions, and adhere to basic standards of neatness and cleanliness. Burns also opined that Noble had no useful ability to function in the following areas: completing a normal workday or workweek without interruptions from psychologically based symptoms, accepting instructions and responding appropriately to criticism from supervisors, dealing with normal work stress, dealing with stress of semi-skilled or skilled work, traveling in unfamiliar places, and using public transportation. Burns explained that Noble:

> has trouble focusing on instructions and struggles with being easily distracted by people or activities going on around her. [She] becomes anxious around other people and experiences mood swings, and struggles with criticism from others. It is important for [her] to have time to herself when she [be]comes stressed and irritable, and anxious. For this reason it may be difficult for her to maintain regular working hours and she may have several absences. . . .
>
> [Noble] struggles with remembering detailed instructions, [and] often becomes anxious and second guesses herself, which causes irritability and withdrawal or absences. . . .
>
> [Noble] becomes anxious and irritable in social settings, especially when she is not familiar with the location or people. She struggles to maintain a regular routine with personal hygiene or cleaning in her home environment.

(Administrative Record at 603-604.) Lastly, Burns estimated that Noble would miss more than four days of work per month due to her impairments or treatment for her impairments.

## IV. CONCLUSIONS OF LAW

### A. *ALJ's Disability Determination*

The ALJ determined that Noble is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined

9

effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Noble had not engaged in substantial gainful activity since June 1, 2007. At the second step, the ALJ concluded from the medical evidence that Noble had the following severe impairments: bipolar disorder, anxiety disorder, possible psychotic disorder, and alcohol dependence. At the third step, the ALJ found that Noble did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Noble's RFC as follows:

> [Noble] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is capable of performing simple, routine tasks involving only brief and superficial interaction with co-workers; occasional interaction with supervisors; and no contact with the public.

(Administrative Record at 15.) Also at the fourth step, the ALJ determined that Noble could not perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Noble could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Noble was not disabled.

### B. Objections Raised By Claimant

Noble argues that the ALJ erred in three respects. First, Noble argues that the ALJ failed to properly evaluate the opinions of her treating mental health counselor, Randi Burns, LMHC. Second, Noble argues that the ALJ failed to properly evaluate her subjective allegations of disability. Lastly, Noble argues that the ALJ's RFC determination

is not supported by substantial evidence in the record because the record was not fully and fairly developed.

### 1. *Burns' Opinions*

Randi Burns, a mental health counselor, is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Burns is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a counselor, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any

11

inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In his decision, the ALJ addressed Burns' opinions as follows:

> The undersigned considered the opinion of the mental health counselor despite the fact that the source is not considered an acceptable medical source. . . . Little weight is given to the opinion as it is not well supported by findings of mental status examination and it is not consistent with [Noble's] level of activities of daily living. For example, the Abbe records show that [Noble] was accorded a GAF of 60, a level associated with mild to moderate symptoms. During her treatment, she was noted to have some mood and symptom changes from time to time, but overall she was alert with normal hygiene, speech, and eye contact, cooperat[ive], appropriate, with intact concentration, and without suicidal ideation, panic sensations, hallucinations, or delusions. (Exhibits 10F; 11F; 14F) Those observations do not support the counselor's assessment of severe cognitive and social limitations. Indeed, her psychiatrist reported that she was "doing quite well" (Exhibit 11F/3).

(Administrative Record at 18.)

Having reviewed the entire record, the Court finds that the ALJ properly considered Burns' opinions in accordance with SSR 06-03p. Furthermore, the ALJ properly articulated his reasons for attributing little weight to Burns' opinions, and for finding her opinions to be inconsistent with the record as a whole. *See Raney*, 396 F.3d at 1010 (Providing that in considering the opinions of a medical source that is not an "acceptable medical source," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record."); *see also Kirby*, 500 F.3d at 709 (providing that an ALJ is entitled to give less weight to a medical source opinion where the opinion is based on a claimant's subjective complaints rather than on objective medical evidence); *Sloan*, 499 F.3d at 889 (providing that a factor to consider in weighing evidence from a

medical source that is not an "acceptable medical source" is the consistency of such as source's opinions with the record as a whole).

Furthermore, in this instance, it makes no difference whether Burns' opinions are considered as the opinions of a non-acceptable medical source; or as Noble argues in her brief, afforded "treating source status" under the team treatment approach articulated in *Shontos v. Barnhart*, 328 F.3d 418, 425-27 (8th Cir. 2003). Because the ALJ properly explained his reasons for giving Burns' opinions "little weight," Burns' classification as a non-acceptable medical source or a treating source is irrelevant. *See Blackburn v. Colvin*, 761 F.3d 853, 859-860 (8th Cir. 2014) (providing that when weighing medical opinions, it makes no difference whether the source of the opinions is an acceptable/treating medical source or a non-acceptable source, if the opinions are discounted as being inconsistent with other substantial evidence in the record). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Credibility Determination*

Noble argues that the ALJ failed to properly evaluate her subjective allegations of disability. Noble maintains that the ALJ's credibility determination is not supported by substantial evidence. Specifically, Noble argues that the ALJ "misrepresented" her activities of daily living and "misconstrued" her activities to support his finding that she is not disabled. The Commissioner argues that the ALJ properly considered Noble's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency,

and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing

so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds [Noble's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however [Noble's] statements concerning the intensity, persistence, and limiting effects of the symptoms are not fully credible. The record reflects [Noble] made inconsistent statements regarding matters relevant to the issue of disability. For example, she initially testified she could perform full-time work milking goats if such a job were offered to her. However, [she] conversely testified she could not do that 40 hours per week. While [Noble] testified she avoided her family, [Noble's] sister indicated in a third party report that [Noble] enjoyed things more and had been more involved with social gatherings with family and church. [Noble] testified she experienced headaches which appears inconsistent with the frequency that she sought care for the alleged condition. Furthermore, [Noble] testified that she experienced hallucinations, but they were controlled on medication and she was able to ignore them. Progress notes for the most part indicated [Noble] denied hallucinations. Notes at Exhibit 14F indicated [Noble] denied hallucinations except for vague sights and appeared to represent typical floaters. These inconsistencies suggest that [Noble] may not be entirely forthright.

> At one point or another in the record, either in forms completed in connection with the application, in medical records, or in testimony, [Noble] reported caring for her personal needs, driving, shopping, washing dishes, doing

laundry, going to the store for groceries, going to substance abuse treatment classes and therapy appointments, . . . playing cards, doing puzzle books, going for walks, and working part-time. The activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.

There is evidence that [Noble] was not compliant in taking prescribed medications, suggesting symptoms may not have been as limiting as alleged. Evidence did not show [Noble] did not have access to free or low cost medical services in accordance with the guidelines in Social Security Ruling 96-7p.

[Noble] admitted to certain abilities, discussed above, which provides support for part of the residual functional capacity conclusion in this decision. For these reasons, the undersigned finds [Noble] has been less than credible regarding her allegation of total disability.

(Administrative Record at 18.)

It is clear from the ALJ's decision that the ALJ thoroughly considered and discussed Noble's treatment history, medical history, functional restrictions, effectiveness of medications, and activities of daily living in making his credibility determination. Moreover, the Court is unconvinced with Noble's argument that the ALJ "misrepresented" and "misconstrued" her activities of daily living. In his decision, the ALJ relied on "forms completed in connection with the application," Noble's medical records, and Noble's own testimony, all found in the record, for determining Noble's activities of daily living.[3] Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Noble's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is

---

[3] *See* Administrative Record at 18.

16

sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Noble's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. RFC Assessment

Noble argues that the ALJ's RFC assessment is not supported by substantial evidence. For example, Noble argues that the "ALJ misrepresented [her] ability to do basic life activities for an ability to perform work on a continuing and sustained basis. This is legal error[.]"[4] Noble concludes that this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'"

---

[4] Noble's Brief (docket number 13) at 15.

*Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In determining Noble's RFC, the ALJ thoroughly addressed and considered her medical history.[5] Furthermore, as discussed in sections *IV.B.1* and *IV.B.2*, and contrary to Noble's assertions, the ALJ properly considered the opinions of Burns and her subjective allegations in making his overall disability determination, including determining Noble's RFC. Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Noble's medical records, observations of treating physicians, and Noble's own description of her limitations in making the ALJ's RFC assessment for

---

[5] *See* Administrative Record at 14-19 (providing a thorough discussion of Noble's overall medical history and treatment).

Noble.[6] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Noble's assertion that the ALJ's RFC assessment is flawed and not supported by substantial evidence is without merit.

## V. CONCLUSION

The Court finds that the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Randi Burns, Noble's treating counselor. The Court also finds that the ALJ properly determined Noble's credibility with regard to her subjective complaints of disability. Lastly, the Court finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 4) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 15th day of January, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[6] *Id.* at 14-19 (providing thorough discussion of the relevant evidence for making a proper RFC determination).